# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JAMIE BOWENS,**

    Petitioner,

    v.                                                           Case No. 12-CV-68

**WILLIAM POLLARD,**

    Respondent.

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DISMISSING CASE

Jamie Bowens, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Bowens is serving a sentence of life without the possibility of extended supervision for first degree intentional homicide, and a concurrent ten year life sentence for felon in possession of firearm. (Am. Habeas Petition, Docket # 11.) Bowens alleges that his conviction and sentence are unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied.

## BACKGROUND

On March 7, 2007, Bowens was charged with first degree intentional homicide and with being a felon in possession of a firearm. As to the felon in possession of a firearm charge, Bowens waived his right to a jury trial and was found guilty by the trial judge. (Answer, Exh. 1, Judgment of Conviction, Docket #20-1 at 1.) Bowens proceeded to jury trial on the first degree intentional homicide count. At trial, the State presented four eyewitnesses who testified that Bowens fatally shot Jadrian Parker over a dispute about a gun that Parker had failed to return to Bowens. (Answer, Exh. 3, *State v. Bowens*,

2009AP1135, (Wis. Ct. App. May 25, 2010), Docket #20-5 at 3.) Two additional witnesses testified that Bowens confessed the murder to them. (*Id.* at 5.) Other circumstantial evidence, cell phone records, and bullet casings linked Bowens to the crime. (*Id.*)

For the defense part, during opening statement, trial counsel stated that Bowens denied being involved in this incident and stated that an alibi defense would be presented (Answer Exh. 15, Docket #20-15, Jury Trial Transcript from January 22, 2008 P.M., Docket 20-15 at 66-70.) Both Bowens' aunt, Latoya Bowens and the mother of his child, Yvette Taylor, testified that Bowens was at home preparing for his daughter's birthday party. (Answer, Exh. 17, Jury Trial Transcript from Jan. 23, 2008 P.M., Docket #20-17 at 89-90, 93-94, 109-110.) However, the first defense witness to testify, Jennifer Garcia, identified Bowens as the person who shot Parker. (*Id.* at 82-82.) On January 24, 2008, a Milwaukee County jury convicted Bowens of first-degree intentional homicide. (Docket #20-1 at 2.)

Bowens' challenge to his conviction is procedurally lengthy and complex. First, Bowens filed a postconviction motion arguing that his trial counsel was ineffective for calling Jennifer Garcia to testify at trial and eliciting testimony from her that Bowens was the man who shot and killed the victim. (Docket #20-5 at 1-2.) The circuit court denied the motion (*Id.*)

Bowens appealed his conviction and the circuit court's order denying his postconviction motion. (*Id.* at 2.) In a May 25, 2010 decision, the Wisconsin Court of Appeals rejected Bowens' claim on the merits and affirmed the circuit court's judgment of conviction and order denying Bowens' postconviction motion. (*Id.* at 8.) On October 27,

2010, the Wisconsin Supreme Court declined further review. (Answer, Exh. 8, Docket # 20-8.)

On January 23, 2012, Bowens filed a petition for writ of habeas corpus. He also filed a motion to stay his petition in order to present unexhausted claims to the state courts. The stay was granted on February 28, 2012. (Docket # 6.) In January 2012, Bowens filed a Wis. Stat. § 974.06 postconviction motion in the circuit court in which he raised the following claims: (1) that trial counsel was ineffective for failing to use Garcia's prior inconsistent statements after she testified that Bowens was the man who shot and killed the victim; (2) that trial counsel was ineffective for failing to call a ballistics expert; (3) that trial counsel was ineffective for failing to request a lesser included homicide instruction; and (4) that appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claims in Bowens' direct appeal. (Answer, Exh. 10, Docket # 20-10 at 6.) The circuit court denied Bowens' motion. (Answer, Exh. 12, *State v. Bowens*, 2012AP2488 (Wis. Ct. App. Feb. 4, 2014), Docket # 20-12 at 3.) Bowens did not timely appeal. (Docket # 20-10 at 9, 23-24; Docket # 20-12 at 4-5.)

In July 2012, Bowens filed a motion for reconsideration in the circuit court. (Docket # 20-12 at 3.) Bowens claimed for the first time that Bowens' trial counsel was ineffective in connection with plea negotiations. (*Id*.) The circuit court denied Bowens' motion for reconsideration on the ground that Bowens' new claims were procedurally barred under Wis. Stat. § 974.06(4) and *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W. 157 (1994). (Docket # 20-10 at 7-8.) Bowens did not timely appeal. (*Id*. at 9, 23-24; Docket # 20-12 at 4-5.)

In October 2012, Bowens filed a motion "for further review" of the order denying Bowens' motion for reconsideration. (Docket # 20-12 at 7.) He asked the circuit court to reconsider its decision denying his claim that trial counsel was ineffective in connection with plea negotiations. (*Id.* at 7-8.) The circuit court denied the motion. (Docket # 20-10 at 8). Bowens appealed. (Docket # 20-12 at 4.) On February 4, 2014, the Wisconsin Court of Appeals affirmed the circuit court's order. (Docket # 20-12.) On September 25, 2014, the Supreme Court declined further review. (Answer, Exh. 13, Docket # 20-13.) On December 12, 2014, Bowens filed this amended petition for writ of habeas corpus. (Docket # 11.)

## STANDARD OF REVIEW

Bowens' amended petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d) (1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or

where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748-49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

### ANALYSIS

Bowens asserts that his trial counsel and appellate counsel were constitutionally ineffective for: (1) failing to properly prepare and utilize prior inconsistent statements when calling a witness he had never investigated, but only personally spoke to, making himself a witness; (2) failing to get a ballistics expert when the gun was never recovered; (3) failing to

put in a lesser included instruction in light of the testimony, or thoroughly apprising his client of the ramifications of not putting in a lesser included instruction; (4) failing to provide Bowens with discovery after he repeatedly requested it or to review the evidence with Bowens with respect to plea bargaining; and (5) failure of appellate counsel to include the additional deficiencies of trial counsel at the post-conviction level. I address each argument in turn.

   *1.   Legal Standard*

The clearly established Supreme Court precedent for ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, Bowens must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. To satisfy *Strickland*'s performance prong, the defendant must identify "acts or omissions of counsel that could not be the result of professional judgment." *United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011, 1015 (7th Cir.1988) (citing *Strickland*, 466 U.S. at 690). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 689). A reviewing court must seek to "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. We "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance," *id.*, and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *id.* at 690.

To establish prejudice, it is "not enough for the defendant to show that his counsel's errors had some conceivable effect on the outcome of the [trial]." *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001). A petitioner must show "that there is a reasonable probability that, but for counsel's errors, the result of the [trial] would have been different." *Strickland*, 466 U.S. at 694. This does not mean that the defendant must show that "counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. Rather, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Making this probability determination requires consideration of the totality of the evidence before the jury. *Id.* at 695. A "verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696. If a party fails on either prong of the *Strickland* test, a court need not consider the other prong. *MacDougal v. McCaughtry,* 951 F.2d 822, 825 (7th Cir. 1992).

2. *Application to this Case*

2.1 Trial Counsel's Performance as to Witness Garcia (Ground One)

Bowens' first ground for relief concerns his trial counsel's performance with witness Jennifer Garcia. (Docket # 20-5 at 6.) As stated earlier, Bowens denied the shooting and declared an alibi defense. However, trial counsel called Jennifer Garcia who was at the scene of the shooting as his first witness. Defense counsel asked Garcia who shot Mr. Parker. Garcia answered a "guy named Jamie Bowens." (Answer, Exh. 17, Jury Trial Transcript from Jan. 23, 2008 P.M., Docket #20-17 at 81-82.) When defense counsel asked "where is he?" Garcia responded "sitting next to you." (*Id*.) Bowens argues that trial counsel failed to do his homework as to this witness, failed to properly utilize her prior inconsistent statements, failed to investigate her, and personally spoke to her—making himself a witness.

In addressing this claim, the Wisconsin Court of Appeals properly cited to *Strickland*. (Docket # 20-5 at 2.) Thus, it did not resolve Bowens' claim in a manner "contrary" to clearly established federal law since it recognized the *Strickland* standard as controlling precedent and followed its two-prong framework. Therefore, I must analyze whether the court unreasonably applied *Strickland* to Bowens' claim of ineffective assistance of counsel.

The court of appeals determined that Bowens failed to show that he was prejudiced by Garcia's testimony because the State presented overwhelming direct and circumstantial evidence that Bowens shot and killed Jadrian Parker. (*Id*. at 3-6.) The court of appeals noted that four trial witnesses, Dominick Johnson, Magdalena Goodlow, Jason Davis, and Lance Pinkins, all identified Bowens as the person who shot Parker. Johnson testified that Bowens asked Parker for a gun that Parker had taken. Bowens got angry because Parker and Pinkins, who was with Parker, would not return the gun. Bowens attempted to shoot Pinkins, but Bowens' gun jammed. Bowens instead hit Pinkins with the gun. Bowens then shot Parker, who was only a couple of feet from Bowens. Johnson testified that he saw two shots hit Parker. (*Id*. at 3)

Magdalena Goodlow (Johnson's mother) testified that she received a text message that there was a fight over a gun so she drove to the scene of the dispute. (*Id*.) She knew the people involved in the dispute and attempted to break up the fight. She then testified that Bowens, who she did not know, arrived at the scene in a car. He demanded that the gun be returned. When it was not given to him, he shot Parker repeatedly at close range. (*Id*. at 4.)

Jason Davis testified that he arrived at the scene with his girlfriend, Magdalena Goodlow. (*Id*.) He also testified that he knew the people involved in the dispute with the exception of Bowens. He testified that he saw Bowens pull up in a car, get out, and

approach the group while holding a gun. Davis testified that he saw Bowens hit Pinkins with the gun and then shoot Parker twice in the chest. Davis further testified that after Parker fell, Bowens walked over to him and shot him four more times in the body. (*Id.*)

Consistent with the other witnesses, Pinkins also testified that the dispute began over a gun that Parker would not return. (*Id.*) Pinkins testified that when Bowens arrived on the scene, he had a gun and told them to return the gun Parker had taken. Pinkins further testified that Bowens pointed the gun at his legs and pulled the trigger, but the gun jammed. He and Bowens then began "tussling over the gun." Bowens gained control of the gun and then shot Parker five or six times from two or three feet away. (*Id.*)

In addition to the four eyewitnesses, the court of appeals noted that two other witnesses, Frank and Katherine Shaw, testified that Bowens confessed to them. (*Id.* at 5.) Specifically, Frank Shaw testified that Bowens arrived in Alabama and stayed with him (or other members of Shaw's family) for several weeks prior to Bowens' arrest. Shaw testified that he had never met Bowens before. Bowens seemed nervous. Shaw testified that eventually Bowens confessed to him that he had murdered a man in Milwaukee. (*Id.*) Shaw testified that he notified the authorities, which lead to Bowens' arrest. Katherine Shaw, Frank Shaw's wife, testified that Bowens confessed to her that he killed a man in Milwaukee "over a gun." (*Id.*)

Finally, the court of appeals cited to other evidence linking Bowens to the murder. An expert witness testified that that cell phone records of Johnson and Bowens showed that six calls were made from Johnson's phone to Bowens' phone shortly before the murder, corroborating the witnesses' testimony that Bowens arrived on the scene due to the dispute over the gun. (*Id.*) Additionally, a detective testified that three shell casings were recovered

from the scene that were fired from the same gun as an older casing found near Bowens' garage. (*Id.*)

On this record, the court of appeals' determination that Bowens had not shown prejudice with regards to counsel's performance as to witness Garcia was not an unreasonable application of *Strickland*. While it is dramatic and unhelpful for the defense's own witness to point to the defendant as the murderer, the court of appeals' reasoning that Bowens could not show that Garcia's identification of him as the shooter prejudiced him in the face of the overwhelming evidence presented by the State was not unreasonable. Again, even excising Garcia's testimony, four witnesses testified that they saw Bowens shoot Parker. Two witnesses from out of state unconnected to Bowens or the other people involved testified that Bowens confessed to them. Finally, Bowens was circumstantially connected to the crime by the shell casing and phone records. Accordingly, because Bowens has not shown that the court of appeals unreasonably applied *Strickland,* he is not entitled to habeas relief on this ground.

### 2.2 Additional Claims of Ineffective Assistance of Counsel (Grounds Two Through Five)

In Grounds Two through Five, Bowens asserts that his trial counsel and subsequently his appellate counsel were ineffective for failing to get a ballistics expert when the gun was never recovered; failing to put in a lesser included instruction in light of the testimony, or thoroughly apprising his client of the ramifications of not putting in a lesser included instruction; failing to provide Bowens with discovery after he repeatedly requested it or to review the evidence with Bowens with respect to plea bargaining; and failure of appellate counsel to include the additional deficiencies of trial counsel at the post-conviction level. Respondent argues that procedural default bars federal review of these claims because

Bowens did not raise them through one complete round of state court review. Additionally, respondent argues that Bowens' claim that counsel was ineffective with regards to plea bargaining (Ground Four) is barred because the state court addressed it on independent and adequate state ground.

As is well established, a federal court may not entertain a petition from a prisoner being held in state custody unless the petitioner has exhausted his state remedies. 28 U.S.C. § 2254(b)(1)(A). A claim is not considered exhausted if the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). With some exceptions, a petition for writ of habeas corpus should be dismissed if state remedies have not been exhausted as to any one of the petitioner's federal claims. *See Rhines v. Weber*, 544 U.S. 269, 277-78 (2005); *Cruz v. Warden of Dwight Corr. Ctr.*, 907 F.2d 665, 667 (7th Cir. 1990). For a constitutional claim to be fairly presented to a state court, both the operative facts and the controlling legal principles must be submitted to that court. *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). Also, the petitioner must invoke one complete round of the normal appellate process, including seeking discretionary review before the state supreme court. *McAtee v. Cowan*, 250 F.3d 506, 508-09 (7th Cir. 2001).

If state court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state court review or for taking an appeal, those remedies are technically exhausted; however, exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim. *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004).

To overcome procedural default, the petitioner must either demonstrate both cause for and prejudice stemming from his procedural default or be able to establish that the denial of relief will result in a miscarriage of justice. *Id*. (citing *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977)). To prove cause, the petitioner must show "that some type of external impediment prevented [him] from presenting his federal claim to the state courts." *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)). In order to establish prejudice, the petitioner must show that "the violation of [his] federal rights 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* (citing *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). The miscarriage of justice exception requires that the petitioner "show that he is actually innocent of the offense for which he was convicted, i.e., that no reasonable juror would have found him guilty of the crime but for the error(s) that he attributed to the state court." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327–29 (1995)).

Here, in the respondent's answer to Bowens' amended petition, the respondent argues that Bowens has procedurally defaulted Ground Two through Five. In his brief, Bowens does not address the procedural default argument. (Docket # 23.) Nor does Bowens file a reply to address the procedural default argument on which the respondent relies in his brief. Review of the record shows that Bowens did raise the claims in Grounds Two through Five in his postconviction motion in the circuit court and in a motion for reconsideration. (Docket # 20-12 at 2-3.) But the court of appeals found that Bowens did not timely appeal the circuit court orders denying his motions and that it only had jurisdition to review the October 2012 order denying the motion for further review. (Docket # 20-12 at 4.) The motion for further review concerned Bowens' claim that trial counsel was ineffective in

connection with plea negotiations (Ground Four). Thus, Grounds Two, Three and Five are procedurally defaulted for failure to raise them in one complete round of state court review.

As to Ground Four, Bowens did complete one round of state court review, but the respondent argues that it cannot be a basis for federal habeas relief because it was decided on independent and adequate state grounds. A claim can be procedurally defaulted when a state court does not reach a federal issue because of a state procedural bar. *Jenkins v. Nelson*, 157 F.3d 485, 491 (7th Cir. 1998). In order to conclude that a petitioner has procedurally defaulted a claim due to an adequate and independent state ground, this Court "must be convinced that the last state court to consider the question actually relied" on a procedural ground "as the basis for its decision." *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000) (internal citations omitted). The state court's reliance on a procedural rule therefore must be explicit. *See id*. In other words, a state law ground is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case. *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010).

Furthermore, to be an adequate ground of decision, the state's procedural rule must be "firmly established and regularly followed," applied in a "consistent and principled way," and the petitioner must be deemed to have been fairly apprised of its existence at the time he acted. *Braun*, 227 F.3d at 912 (internal quotations and citations omitted). Again, a procedural default will bar federal habeas relief unless the petitioner can demonstrate both cause for and prejudice stemming from that default or he can establish that the denial of relief will result in a miscarriage of justice. *Lewis*, 390 F.3d at 1026 (citing *Wainwright*, 433 U.S. at 86–87).

In this case, in his motion for further review, Bowens argued that the circuit court should reconsider its order that *Escalona-Naranjo* barred Bowens' claim that trial counsel was ineffective in connection to plea negotiations. *Escalona-Naranjo* bars the raising of additional issues, including claims of constitutional or jurisdictional violations, in a subsequent motion or appeal where those issues could have been raised previously. Bowens asked the court to reconsider, arguing that then new Supreme Court decisions *Lafler v. Cooper*, 566 U.S. 156 (2012) and *Missouri v. Frye*, 566 U.S. 134 (2012) had not been decided at the time of his first appeal and initial post-conviction motion. *Frye* held "that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," 566 U.S. at 145, and *Lafler* explained how to apply the ordinary test for ineffective assistance when the claim is that trial counsel's ineffectiveness caused a defendant to reject a plea and the defendant is later convicted at trial, 566 U.S. at 162-64.

The circuit denied the motion, reasoning that *Lafler* and *Frye* did not constitute sufficient reason for failing to raise the claim in the earlier motion or appeal as required by *Escalona-Naranjo*. The Wisconsin Court of Appeals agreed. Additionally, the Wisconsin Court of Appeals stated regardless of the *Escalona-Naranjo* bar, Bowens' claim would fail because it did not allege sufficient material facts as required by *State v. Allen*, 2004 WI 106, ¶ 9, 274 Wis. 2d 568, 682 N.W.2d 433, which if true would entitle him to relief. The court of appeals concluded "whether because of a procedural bar or on the merits," Bowens' claim would fail.

The court of appeals' conclusion that *Escalona-Naranjo* barred consideration of Bowens' claim of ineffective assistance of counsel in connection to plea bargaining

represents adequate and independent state grounds precluding me from addressing the merits of Ground Four of Bowens amended' habeas petition. The *Escalona-Naranjo* bar has been found to be an adequate and independent state ground precluding habeas relief. *Perry v. McCaughtry*, 308 F.3d 682, 692 (7th Cir. 2002). Additionally, the Wisconsin Court of Appeals' reliance on *Allen* also constitutes an independent an adequate state ground barring federal habeas review. *Lee v. Foster*, 750 F.3d 687, 694 (7th Cir. 2014). Finally, even though the court of appeals concluded that Bowens' claim would fail "whether because of a procedural bar or on the merits," its statement regarding the merits of Bowens' claim does not override the procedural bar. "A state court may reach the merits of a federal claim in an alternative holding; if it does so explicitly, then the independent and adequate state ground doctrine 'curtails reconsideration of the federal issue on federal habeas.'" *Moore v. Bryant*, 295 F.3d 771, 775 (7th Cir. 2002) (quoting *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989)).

Having found that Grounds Two through Five were procedurally defaulted, habeas review is permitted only if Bowens meets an exception to the procedural default. Again, Bowens does not address the procedural default; rather, he argues it would be a miscarriage of justice not to reach the merits of his claims. (Docket # 23 at 5.) As stated above, the miscarriage of justice exception requires that the petitioner "show that he is actually innocent of the offense for which he was convicted, i.e., that no reasonable juror would have found him guilty of the crime but for the error(s) that he attributed to the state court." *Lewis*, 390 F.3d at 1026 (citing *Schlup*, 513 U.S. at 327–29). Bowens has not met this rare exception. He has not presented evidence of actual innocence. Thus, he has failed to establish the miscarriage of justice exception to procedural default. For these reasons, Bowens' habeas petition must be dismissed.

## CONCLUSION

I find that the Wisconsin Court of Appeals did not unreasonably apply *Strickland* to Bowens' ineffective assistance claim in Ground One. I also find that Bowens has procedurally defaulted Grounds Two through Five and he has not established any exception to the procedural default bar. Bowens' petition for writ of habeas corpus must be denied and his case dismissed.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

When issues are resolved on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. Each showing is a threshold inquiry; thus, the court need only address one component if that particular showing will resolve the issue. *Id*. at 485.

In this case, reasonable jurists would not find the decision to deny Bowens' petition debatable or wrong. I will deny Bowens a certificate of appealability. Bowens retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that Bowens' petition for a writ of habeas corpus (Docket # 11) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 29th day of March, 2018.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge